1997 OK 126

**In the Matter of Income Tax Protest of Ernest E. and Gloria J. REDBIRD, Appellants,**

v.

**OKLAHOMA TAX COMMISSION, Appellee.**

No. 87085.

Supreme Court of Oklahoma.

Oct. 14, 1997.

**30.**  *O'Bannon v. Oklahoma Tax Commission,* 1981   OK 99, 633 P.2d 741, 742.

G. William Rice of Rice & Bigler, Cushing, for Appellants.

Gregory K. Frizzell, General Counsel, Kathryn Bass, Deputy General Counsel, Oklahoma Tax Commission, Oklahoma City, for Appellee.

SUMMERS, Vice Chief Justice.

¶ 1 Ernest and Gloria Redbird worked for the Bureau of Indian Affairs on Indian Trust land held for the tribes by the United States. He is an enrolled Kiowa Indian and she is an enrolled Apache. Both claim to also reside on Indian trust property. They paid their Oklahoma income taxes for the years 1979–1985, and in 1991 made an unsuccessful claim for refund to the Oklahoma Tax Commission, resulting in this appeal. If their claims were not barred by the statute of limitations this would present an important tax law question of first impression. But since the limitations defense prevails we do not reach the merits of the tax question.

¶ 2 The Redbirds' first claim for refund was made in 1982. Then in 1983 they filed a protest with the Commission, claiming the State had no authority to tax their income. The Commission denied the claim in 1985, and the Redbirds did not appeal.

¶ 3 In May of 1991 they again claimed a refund, this time for the years 1979–1985. Their arguments were the same as before— that their status as residents and employees on land in effect owned by their tribes (Kiowa, Commanche, and Apache) exempted their income from the State income tax.

¶ 4 The Commission argued that this second protest should be dismissed because: (1). The taxability of their income for the tax years 1979–1981 had been the subject of litigation, and the doctrine of *res judicata* barred its relitigation; and (2). The 1991 protest as to tax years 1982–1985 was untimely because of the three-year statute of limitations provided by 68 O.S. § 2373.

¶ 5 A hearing was scheduled and notice sent to the taxpayers. Although they were afforded the opportunity to furnish a brief in support of their protest none was filed. The Administrative Law Judge recommended that the protest be dismissed "for failure of the Taxpayers to submit evidence sufficient to show they are entitled to the relief requested in Case No. P–91–253." Commission Order 96–01–25–028 was issued adopting the findings, conclusions, and recommendations of the A.L.J. The Redbirds appealed, and we have retained the case in this Court.

¶ 6 We first address the Commission's argument that refund claims are barred by limitations, because if it is correct we need not address the others. Title 68 O.S.1991 § 2373 provides in pertinent part:

If upon any revision or adjustment, including overpayment or illegal payment on account of income derived from tax-exempt Indian land, any refund is found to be due any taxpayer, it shall be paid out of the "Income Tax Withholding Refund Account", created by Section 2385.16 of this title, in the same manner as refunds are paid pursuant to said section.

The information filed, reflecting the revision or adjustment, shall constitute the claim for refund.

Except as provided in subsection (H) of Section 2375 of this title, *the amount of the refund shall not exceed the portion of the tax paid during the three (3) years immediately preceding the filing of the claim,* or, if no claim was filed, then during the three (3) years immediately preceding the allowance of the refund; provided, however, this three-year limitation shall not apply to the amount of refunds payable upon claims filed by the United States on behalf of its Indian wards or former Indian wards, to recover taxes illegally collected from tax-exempt lands. (Emphasis added)

¶ 7 The Redbirds argue that Oklahoma statutes of limitation can not apply to their request for a refund of Oklahoma income taxes, that state statutes of limitations or repose cannot be used to defeat an exemption created by federal law. More specifically they argue that a state statute of limitations cannot be used to defeat an Indian's federally granted exemption.

¶ 8 In controversies of this nature courts usually begin with determining whether there exists federal legislation that acts as a bar to the assertion of state jurisdiction over

the particular activity involving the Indian or Tribe before the court, and whether express authorization has been given to the State to exercise jurisdiction. *Arizona v. San Carlos Apache Tribe of Arizona,* 463 U.S. 545, 561, 103 S.Ct. 3201, 3210, 77 L.Ed.2d 837 (1983); *Oklahoma Tax Commission v. Sac and Fox Nation,* 508 U.S. 114, 113 S.Ct. 1985, 124 L.Ed.2d 30 (1993). For example, in *Oklahoma Tax Commission v. Sac and Fox,* the Court said that: "In *McClanahan v. Arizona State Tax Commission,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), we held that a State was without jurisdiction to subject a tribal member living on the reservation, and whose income derived from reservation sources, to a state income tax absent an express authorization from Congress." *Id.* 508 U.S. at 123, 113 S.Ct. at 1990. The relevant treaties must also be examined. *Oklahoma Tax Commission v. Sac and Fox Nation,* 508 U.S. 114, 126, 113 S.Ct. 1985, 1992, 124 L.Ed.2d 30 (1993).

¶ 9    Appellants' brief does not cite to any treaty. However, it does cite to one federal statute and an opinion construing that statute: 44 Stat 239, Section 2 and *Armstrong v. Maple Leaf Apartments, Ltd.,* 622 F.2d 466 (10th Cir.1979), *cert. denied,* 449 U.S. 901, 101 S.Ct. 271, 66 L.Ed.2d 131 (1980). The court there explains that the federal Act made Oklahoma state statutes of limitation applicable to restricted Indians of the Five Civilized Tribes, their heirs, and grantees, with respect to causes of action involving allotted lands. *Id.* 622 F.2d at 472. *See also Wolfe v. Phillips,* 172 F.2d 481, 484–485 (10th Cir.1949), *cert. denied,* 336 U.S. 968, 69 S.Ct. 941, 93 L.Ed. 1119 (1949); *Caywood v. January,* 455 P.2d 49, 50 (Okla.1969); *Kanuebbe v. McCuistion,* 168 Okla. 165, 33 P.2d 1088, 1089–1090 (1934). Certainly, this serves as an example of federal adoption of state statutes as they relate to federally recognized rights. But the example provides no authority for the application of state statutes of limitation in state tax proceedings adjudicating federal rights.

¶ 10    In *Ward v. Board of Commissioners of Love County,* 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751 (1920) a suit was brought to recover taxes paid by Indians on exempt lands, and the Supreme Court explained that no statutory authority was essential to enable or require the county to refund the money. *Id.* 253 U.S. at 21, 40 S.Ct. at 421. The Court noted that application of the statute of limitations was not before it, and stated that upon remand "it will be open to that court to deal with the point as to the whole claim or any item in it as any valid local law in force when the claim was filed may require." *Id.* 253 U.S. at 25, 40 S.Ct. at 422. Then in *Carpenter v. Shaw,* 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478 (1930) the Court explained that Indian allotments were not subject to state taxation while the allottees' retained title, and a state royalty tax was therefore invalid. The Court relied upon *Ward,* and concluded that when a tax is paid under compulsion "a denial by a state court of a recovery of taxes exacted in violation of the laws or Constitution of the United States by compulsion is itself in contravention of the Fourteenth Amendment." *Id.* 280 U.S. at 369, 50 S.Ct. at 123. This language was recently quoted in *Reich v. Collins,* 513 U.S. 106, 109, 115 S.Ct. 547, 549, 130 L.Ed.2d 454 (1994). Therein the Court stated that *Ward* and *Carpenter* were part of a long line of cases on the subject of Due Process Clause requirements for remedies when taxes are exacted in violation of federal laws and the Constitution. *Reich* 513 U.S. at 109–110, 115 S.Ct. at 549–550. The Court also indicated that *Ward* and *Carpenter* were used for this purpose in *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Business Regulation,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). *Id.*

¶ 11    Our own Court looked at *McKesson* in *Stallings v. Oklahoma Tax Commission,* 1994 OK 99, 880 P.2d 912. Therein the taxpayers sought to recover state income taxes allegedly exacted in violation of the United States Constitution. Those taxpayers similarly argued that their federal constitutional right could not be defeated by a state-created statutory protest procedure. We reviewed the applicable authority from the United States Supreme Court, and we concluded that "A state may, therefore, impose a requirement that refunds for an unconstitutional tax will be available only for those complying with a statutorily prescribed pro-

test procedure." *Id.* ¶ 15, 880 P.2d at 918. We also observed in that case the holding from *Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), that the federal law does not necessarily require a refund of taxes exacted in violation of the Constitution. *Id.*

¶ 12 The High Court in *Reich* revisited the issue and made the following observation with regard to procedures in Georgia:

In a long line of cases, this Court has established that due process requires a "clear and certain" remedy for taxes collected in violation of federal law. *Atchison, T. & S.F.R. Co. v. O'Connor,* 223 U.S. 280, 285, 32 S.Ct. 216, 217, 56 L.Ed. 436 (1912) (Holmes, J.). A State has the flexibility to provide that remedy before the disputed taxes are paid (predeprivation), after they are paid (postdeprivation), or both. But what it may not do, and what Georgia did here, is hold out what plainly appears to be a "clear and certain" postdeprivation remedy and then declare, only after the disputed taxes have been paid, that no such remedy exists.

*Reich* 513 U.S. at 108, 115 S.Ct. at 548.

The Court went on to say:

The Georgia Supreme Court is no doubt right that, under *McKesson,* Georgia has the flexibility to maintain an exclusively predeprivation remedial scheme, so long as that scheme is "clear and certain." Due process, we should add, also allows the State to maintain an exclusively postdeprivation regime, see, e.g., *Bob Jones Univ. v. Simon,* 416 U.S. 725, 746–748, 94 S.Ct. 2038, 2050–2052, 40 L.Ed.2d 496 (1974), or a hybrid regime. A State is free as well to reconfigure its remedial scheme over time, to fit its changing needs. Such choices are generally a matter only of state law.

But what a State may not do, and what Georgia did here, is to reconfigure its scheme, unfairly, in midcourse—to "bait and switch," as some have described it. Specifically, in the mid–1980's, Georgia held out what plainly appeared to be a

"clear and certain" postdeprivation remedy, in the form of its tax refund statute, and then declared, only after *Reich* and others had paid the disputed taxes, that no such remedy exists.

*Reich,* 513 U.S. at 110–111, 115 S.Ct. at 549–550.

Thus a federally granted right, such as the Redbirds' claim to have, may be precluded from successful assertion due to a state procedural rule in a state tax adjudicatory proceeding so long as that rule is "clear and certain". The focus of our inquiry thus becomes whether the Redbirds had a clear and certain remedy to challenge their state income taxes for the tax years 1979–1985.[1]

¶ 13 In *Sowders v. Oklahoma Tax Commission,* 527 P.2d 852 (Okla.1974) the taxpayer filed a claim for refund of state income taxes paid in 1969, 1970, and 1971. We noted that 68 O.S.1971 § 2373 authorized a taxpayer to seek a refund of income taxes subject to a three-year period of limitations. *Id.* 527 P.2d at 855. Then in *First of McAlester Corp. v. Oklahoma Tax Commission,* 1985 OK 52, 709 P.2d 1026 the taxpayers sought refunds for taxes paid in 1979, 1980, and 1981, and we said that payment under protest was not a requirement for the filing of refunds of taxes paid under 68 O.S.1981 § 2373. In *Strelecki v. Oklahoma Tax Commission,* 1993 OK 122, 872 P.2d 910, the taxpayers filed amended returns, seeking income tax refunds for 1985–1988. Their claims were denied by the Tax Commission. They appealed to this Court, using the remedy provided by 68 O.S.1981 § 225. *Id.* 872 P.2d at 912 n. 13. We recognized the remedy of amending income tax returns pursuant to 68 O.S.1981 § 2375 as a procedure to recover income taxes. *Id.* 872 P.2d at 920. We also explained that the remedy of § 2373 was available when a person voluntarily overpaid income tax and sought a refund within the three-year limitations period. *Id.* 872 P.2d at 920–921.

¶ 14 We also note that during the tax years in question a taxpayer could pay a tax

---

1. In this analysis of whether the Redbirds are subject to a state statute of limitations for tax refund purposes we are treating it as if they were, in the law, entitled to such a refund absent the limitations defense. As we stated in the body of the opinion, our ruling on the limitations issue makes it unnecessary to address the state-tax-law-versus-federal-Indian-law question.

under protest, give notice to the Tax Commission of filing suit, and then file suit in the District Court when the taxes are claimed to be an unlawful burden on interstate commerce, or violative of any Congressional Act or provision of the Federal Constitution, or in cases where jurisdiction is vested in any of the Courts of the United States. 68 O.S.1981 § 226.

¶ 15 The taxpayers in our case today claim that the tax violates federal law. But they did not attempt to use any of statutory refund remedies in a timely fashion, nor have they raised any argument that the state refund procedures were inadequate, unclear, or uncertain. We conclude that the state procedures provided a clear and certain remedy, and that the limitations period is applicable.

█ ¶ 16 Taxpayers then argue that if 68 O.S. § 2373 applies their claim for refund should be construed as one made by the United States. The statute provides in part:
... the amount of the refund shall not exceed the portion of the tax paid during the three (3) years immediately preceding the filing of the claim, or, if no claim was filed, then during the three (3) years immediately preceding the allowance of the refund; provided, however, this three year limitation shall not apply to the amount of refunds payable upon *claims filed by the United States* on behalf of its Indian wards or former Indian wards, to recover taxes illegally collected from tax-exempt lands. (emphasis added)

68 O.S.1981 § 2373.

█ The statute plainly states that claims filed by the United States are not subject to a limitations period. Generally, if the legislative intent is clear from the plain language, there is no room for statutory construction. *Wiley Elec., Inc. v. Brantley,* 1988 OK 80, 760 P.2d 182, 186; *Cooper v. State ex rel. Dept. of Public Safety,* 1996 OK 49, 917 P.2d 466, 468.

█ ¶ 17 Further, when this statute was originally enacted it did not contain the language exempting claims filed by the United States from the limitations period. Okla. Sess.Laws 1935, p. 301, § 28. In a 1939 opinion involving a suit filed in Kansas by the United States on behalf a restricted Indian ward to recover taxes the Court said that "state notions of laches and state statutes of limitations have no applicability to suits by the Government, whether on behalf of Indians or otherwise." *Board of Commissioners of Jackson County v. United States,* 308 U.S. 343, 351, 60 S.Ct. 285, 288, 84 L.Ed. 313 (1939). In 1947 our Legislature added the provision that the limitations period did not apply to claims filed by the United States. Okla.Sess.Laws 1947 at p. 440, § 3, and p. 453, § 10.

## CONCLUSION

¶ 18 Our statutory remedies for refund of illegally collected taxes are sufficiently clear and certain to withstand federal scrutiny, assuming (which we do not) that the taxpayers stated a federal claim for refund. The statute of limitations is three years, and it is applicable here.

¶ 19 Neither the plain language nor history of the statute provide support for treating the taxpayers' claim as one filed by the United States. We therefor conclude that the taxpayers' 1991 claim for income tax refunds for the years 1979–1985 is untimely. The Order of the Tax Commission is affirmed.

¶ 20 KAUGER, C.J., and HODGES, LAVENDER, OPALA and WATT, JJ., concur.

¶ 21 SIMMS, J., concurs in judgment.

¶ 22 HARGRAVE and ALMA WILSON, JJ., concur in result.